UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER M. JONES,

            Petitioner,                  Case No. 4:15-cv-12239
                                                            Hon. Terrence G. Berg

v.

THOMAS WINN,

            Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

      This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Christopher M. Jones was convicted after a jury trial in the Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS §750.316, and arson of a dwelling house. MICH. COMP. LAWS §750.72. He was sentenced as a third-time habitual felony offender to concurrent terms of life for the murder conviction and 162 months to forty years for the arson conviction.

      The petition raises four claims: (1) the police failed to exercise due diligence in securing the attendance of a key witness which resulted in the erroneous admission of the witness's prior testimony, (2) insufficient evidence was presented at trial to sustain Petitioner's convictions, (3) Petitioner was denied the effective assistance of counsel for failing to object to the admission of the prior testimony, and (4) trial counsel was ineffective for failing to investigate challenges to the credibility of the

missing witness.

The Court will deny the petition because the state court adjudication of Petitioner's claims did not involve an unreasonable application of clearly established Supreme Court law. The Court will also deny Petitioner a certificate of appealability and permission to proceed on appeal *in forma pauperis*.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise out of the August 5, 2011, stabbing death of Stephen Brinkley and the burning of Brinkley's home the same day. During the months preceding the crimes, defendant lived with Brinkley. In the early morning hours of August 5, 2011, the victim's neighbor, Troy Dunomes, who resided directly across the street from the victim, observed a man he identified as defendant exit the front door of the victim's home and walk away, without screaming, yelling, or saying anything. Dunomes noticed smoke coming from the back of the victim's house and grabbed his cell phone and called "911," while defendant walked to the corner of the street and disappeared. Firefighters responded immediately and, after containing the fire, discovered the victim's body inside the home. The victim had sustained multiple stab wounds, including wounds to his chest, abdomen, and eyeball, and had numerous incised wounds on his face and extremities. The medical examiner opined that the victim died from the stab wounds and found no evidence that he was alive at the time of the fire. Investigators did not find any evidence of a forced entry into the home and concluded that the fire was intentionally set. Testing by a forensic biologist revealed that blood collected from the interior of the front door of the victim's home and from a pair of boy's underwear found on the floor near the door matched defendant's DNA. Three days after the fire, defendant appeared at the home of Yolette Bass. Bass testified that defendant did not look good and had wounds on his hands. The medical examiner reviewed photographs of defendant's hands taken at the time of his arrest and testified that the wounds were "relatively fresh" or "days old." Defendant told Bass that he was in a fight and that there was a fire

at his home. Police arrested defendant at Bass' home. Dunomes identified defendant in a live lineup as the man he observed leaving the victim's home on the morning of the fire.

*People v. Jones,* No. 312113, 2014 WL 2040009, at *1 (Mich. Ct. App. May 15, 2014).

Following his conviction and sentence, Petitioner's appellate counsel filed a claim of appeal in the Michigan Court of Appeals. Counsel filed an appellate brief which raised the following claim:

> I. Did the Trial Court abused [*sic*] its discretion in finding that due diligence had been exercised to secure the missing, key prosecution witness, where, as a result of the Court's erroneous conclusion the jury was ultimately denied the missing-witness instruction, and, in turn, Mr. Jones was denied his state and federal constitutional rights to a fair trial by a properly instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges?

Petitioner also filed a supplemental pro se brief, raising the following additional claims:

> I. Did the trial court violate Defendant's due process rights where insufficient evidence was presented at trial to sustain his conviction?
>
> II. Was defense counsel constitutionally ineffective by failing to object or conducting a proper investigation?

The Michigan Court of Appeals affirmed Jones's conviction in an unpublished opinion. *Jones*, 2014 WL 2040009, at *5.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claims as in the Michigan Court of Appeals, and an additional claim not presented to the court of appeals:

> I. The statement and testimony against Defendant which was testimonial and admitted by the court was not evident of any reliable and admissible evidence supporting the credibility of the declarant and

was not challenged by defense counsel which effectively denied
Defendant the right to present a defense.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Jones*, 853 N.W.2d 362 (Mich. 2014) (unpublished table decision).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

4

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotations omitted).

### III. Analysis

**A. Procedural Default**

Respondent asserts that several of Petitioner's claims are barred from review because of his procedural defaults of failing to preserve his claims at trial or by failing to present them to the Michigan Court of Appeals on federal grounds.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially because Petitioner alleges that his attorneys were ineffective for failing to preserve the defaulted claims.

**B. Admission of Prior Testimony**

Petitioner's first claim asserts that the trial court erroneously allowed the prosecutor to present Troy Dunomes' preliminary examination testimony at trial where the police failed to exercise due diligence in attempting to locate Dunomes to present his live testimony at trial.

To the extent Petitioner claims that the admission of the prior testimony was erroneous under state law, the claim does not state a cognizable basis for granting habeas relief. Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Federal law does not require the production of eyewitnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001).

6

"[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (6th Cir. 1988) (table) (citing *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness in itself is outside the scope of federal habeas review. *Collier*, 419 Fed. Appx. at 559.

Petitioner also asserts that his rights under the Confrontation Clause of the Sixth Amendment were violated because he was denied the opportunity to cross-examine Dunomes at trial. The United States Constitution's Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The right to a trial by jury is based on the belief "that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Id.* at 405 (quoting *Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)). The Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

7

First, Petitioner challenges the trial court's finding that Dunomes was unavailable because the police did not make a good-faith effort to obtain his presence at trial. Under federal law, "a witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968). "The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness . . . [and] the prosecution bears the burden of establishing this predicate." *Ohio v. Roberts*, 448 U.S. 56, 74-75 (1980), abrogated on other grounds by *Crawford*, 541 U.S. 36.

The Michigan Court of Appeals held that the prosecution exercised due diligence in attempting to locate Dunomes:

> Having reviewed the record, we conclude that the prosecutor exercised due diligence in attempting to secure Dunomes' presence at trial. Here, the officer in charge of the investigation became aware that Dunomes relocated to Louisiana and the officer located Dunomes' new address through the Marshal's Office in Louisiana. The assistant prosecutor then attempted to secure Dunomes' presence at trial by serving him with a subpoena to appear and assuring that he received it. Dunomes refused to cooperate, indicating that he was unwilling to testify because he feared he would lose his job if he returned to Michigan. Dunomes refused to disclose the name of his employer.
>
> Thereafter, the prosecutor obtained a material witness detainer to apprehend Dunomes and send him to Michigan. The prosecutor sent the detainer to the prosecuting attorney's office in the locality in Louisiana where Dunomes was believed to be residing and a court ordered Dunomes brought before the court on the detainer and sent to Michigan. The prosecutor followed-up on the detainer by contacting a detective in Louisiana. The detective indicated that attempts to locate and apprehend Dunomes were unsuccessful. The prosecutor also

8

>attempted to call Dunomes numerous times and left voicemail messages, but Dunomes did not respond.
>
>In short, these efforts were reasonable under the circumstances and the trial court did not abuse its discretion in holding that Dunomes was unavailable within the meaning of MRE 804(a)(5). Although defendant argues that the prosecution should have made additional efforts, due diligence requires the prosecution to do everything reasonable, not everything possible, to obtain the presence of the witness. *People v. Eccles*, 260 Mich. App. 379, 391 (2004).

*Jones*, 2014 WL 2040009, at *2-3.

This Court cannot say that the Michigan Court of Appeals' decision that the prosecutor acted with due diligence to secure Dunomes' presence at trial was contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented. The Supreme Court has held that "[t]he lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Roberts*, 448 U.S. at 74. The record supports a finding that the prosecution acted with reasonable diligence in this case.

Second, the Court must consider whether the second prong of *Crawford*, a "prior opportunity for cross-examination," was satisfied by Dunomes' testimony at the preliminary examination. The Michigan Court of Appeals held that it was:

>In this case, defendant had the opportunity and did cross-examine Dunomes during the preliminary examination. Defendant had a similar motive to develop the testimony during the preliminary examination as he would have at trial—i.e., in both scenarios he was motivated to challenge Dunomes' assertion that he saw defendant leaving the crime scene at the time the fire started.

*Jones*, 2014 WL 2040009, at *3.

The Sixth Circuit Court of Appeals has acknowledged "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x. 435, 437 (6th Cir. 2010) (citing *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)). But the Sixth Circuit Court of Appeals has further observed that "because there is room for reasonable debate on the issue," a state court's decision that a preliminary examination satisfies the "opportunity for cross-examination" requirement, "is necessarily beyond [a federal court's] power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014)). Because there is no "clearly established federal law" within the meaning of § 2254(d)(1) contradicting the finding of the state court that cross examination during a preliminary hearing satisfies the requirements of C*rawford*, the Court must deny habeas relief on this claim.

**C. Sufficiency of the Evidence**

Petitioner next asserts that insufficient evidence was presented at trial to sustain his convictions.

First, to the extent that Petitioner argues that the evidence would have been insufficient if Dunomes' testimony was excluded, the claim is frivolous. "[A]

10

reviewing court must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (emphasis added); see also *United States v. Clay*, 667 F.3d 689, 701 (6th Cir. 2012) (same). "Because [Petitioner's] claim depends on his assertion that the evidence of his guilt was insufficient without [the preliminary examination testimony], it necessarily fails because consideration of that [prior testimony] is required for purposes of a sufficiency-of-the-evidence evaluation." *Sanborn v. Parker*, 629 F.3d 554, 578-79 (6th Cir. 2010).

To the extent Petitioner asserts that insufficient evidence was presented even including the prior testimony, "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

To constitute first-degree murder in Michigan, the prosecution must establish

11

that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Hofbauer*, 159 F. Supp. 2d at 596 (citing *People v. Anderson*, 209 Mich. App. 527, 537 (1995)).

Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson*, 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470 (1975)). Finally, premeditation and intent to kill may be inferred from circumstantial evidence. See *DeLisle v. Rivers*, 161 F. 3d 370, 389 (6th Cir. 1998).

Here, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> Dunomes indicated that he observed defendant exit the front door of the victim's home in the early morning and walk away calmly as smoke began to emerge from the home. Evidence showed that the fire was intentionally set after the victim was murdered. Other evidence showed that there were no signs of forced entry and that defendant lived with the victim. A rational trier of fact could reasonably infer that defendant started the fire in an effort to conceal his involvement in the murder. *See People v. Cutchall,* 200 Mich. App. 396, 398–40 (1993) (attempts to conceal involvement in a crime are probative of consciousness of guilt and are therefore relevant).
>
> Furthermore, a forensic biologist testified that blood obtained from the interior of the front door of the victim's home and on a pair of children's underwear near the door matched defendant's DNA. Bass testified that defendant's [*sic*] had cuts on his hands when he appeared at her house three or four days after the fire. Medical testimony showed that the victim suffered defensive wounds, indicating that the victim attempted to stop his attacker. This evidence would have allowed a rational juror to conclude beyond a reasonable doubt that defendant left

> his own blood at the crime scene because he cut himself when he stabbed the victim to death with a knife.
>
> In sum, viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could conclude beyond a reasonable doubt that defendant was guilty of the charged offenses. *Nowack,* 462 Mich. at 399. Although this case consisted largely of circumstantial evidence, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Carines,* 460 Mich. at 757.

*Jones*, 2014 WL 2040009, at *4-5.

Petitioner's claim does not implicate an unreasonable application of the clearly established Supreme Court standard. Viewing the evidence most favorably to the prosecution, overwhelming circumstantial evidence was presented at trial to demonstrate that Petitioner murdered the victim. Viewed under the *Jackson* framework, the evidence showed that Petitioner stabbed the victim multiple times and injured himself during the crime, leaving his blood at the scene. Given the doubly-deferential standard of review under section 2254(d) and *Jackson*, Petitioner has failed to demonstrate entitlement to habeas relief with respect to this claim.

**D. Ineffective Assistance of Counsel**

Petitioner asserts in his third claim that his trial counsel was ineffective for failing to challenge the admissibility of Dunomes' prior testimony. The Court interprets his fourth claim as asserting that his counsel failed to conduct an adequate investigation that would have led to a basis to more effectively challenge the credibility of Dunomes' testimony at the preliminary examination.

The Michigan Court of Appeals was presented with the first portion of

Petitioner's ineffective assistance of counsel claim, and rejected it as follows:

> Next, defendant claims that trial counsel was ineffective for failing to object to and "investigate" Dunomes' preliminary examination testimony. Contrary to defendant's assertion, counsel did object to Dunomes' testimony on evidentiary grounds. There was nothing to investigate. Moreover, as discussed above, Dunomes' testimony did not violate the Confrontation Clause; therefore, objection on constitutional grounds would have been futile and counsel is not ineffective for failing to raise a futile objection. *See People v. Ericksen*, 288 Mich. App. 192, 201 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.")

*Jones*, 2014 WL 2040009, at *5.

A defendant asserting ineffective assistance of counsel must make two showings. First, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. [We] must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Second, he must demonstrate prejudice, meaning "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" meaning that when applied together, our "review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 689; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Here, the state appellate court reasonably applied this standard in finding

14

that counsel did, in fact, challenge the admission of the prior testimony on the grounds that the prosecutor did not exercise due diligence in attempting to locate the missing witness. The trial court, the state appellate court, and this Court have found that the objection was meritless and that the prior testimony was properly admitted. Because there was no error, Petitioner's trial counsel could not have been ineffective for failing to challenge the trial court's ruling on the admission of the prior testimony. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

With respect to the failure to investigate claim, Petitioner does not provide any factual basis to support it. He alludes to unexplored avenues in which his counsel might have attacked Dunomes' credibility, but he does not proffer any specific details to support his claim. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of counsel claim, Petitioner is also not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

Petitioner has not offered, either to the Michigan courts or to this Court, any evidence beyond his own vague and general assertions that there were additional ways to attack Dunomes' credibility. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to further investigate

15

the matter. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner's third and fourth claims are therefore without merit.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate whether the petition should have been resolved in a different manner. The Court will therefore deny a certificate of appealability. The Court will also deny permission to appeal *in forma pauperis* because an appeal of this decision cannot be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's pending motions, 3) **DENIES** a certificate

of appealability, and 4) **DENIES** permission to appeal *in forma pauperis*.

    **SO ORDERED.**

s/Terrence G. Berg<br>
TERRENCE G. BERG<br>
UNITED STATES DISTRICT JUDGE

Dated:   October 31, 2016

**<u>Certificate of Service</u>**

    I hereby certify that this Order was electronically submitted on October 31, 2016, using the CM/ECF system, which will send notification to each party.

s/A. Chubb<br>
Case Manager

17